IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William McNeil,                          :
                                         :
                    Petitioner           :
                                         :
            v.                           :  No. 530 C.D. 2024
                                         :  Submitted:  March 4, 2025
City of Philadelphia (Workers'           :
Compensation Appeal Board),              :
                                         :
                    Respondent           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                      FILED:  March 28, 2025


        William McNeil (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1; 2501-2710.

## Background

Claimant is employed by Employer as a police officer. Claimant was diagnosed with COVID-19 (COVID) on December 18, 2020. He notified his supervisors, Corporal Jared Merch, Sergeant Michelle Long, and Sergeant Dayton[2] that he was diagnosed with COVID and that he believed he had contracted the virus at work in December of 2020. He last worked for Employer on December 12, 2020. While disabled due to COVID, Claimant received wage continuation benefits, referred to as "E-time," until March 7, 2022. On that date, E-Time was unilaterally stopped by Employer. WCJ's Decision, Finding of Fact (F.F.) No. 2(a)-(b).

Employer issued a Notice of Compensation Denial (NCD) on January 24, 2022. On March 15, 2022, Claimant filed the Petitions, alleging that Employer "unilaterally terminated benefits after accepting this claim with the payment of wages in lieu of compensation as a matter of law." Certified Record (C.R.) at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified virtually before the WCJ on April 19, 2022.[3] Claimant detailed the facts set forth above and indicated that he continued to experience COVID symptoms that prevent him from working as a police officer. Claimant stated that following his diagnosis, he suffered "multi-organ failure," where his heart, kidneys and lungs failed. WCJ's Decision, F.F. No. 2(c). Claimant was in the hospital for approximately 45 days. Claimant indicated that he was still suffering from heart issues and was under the care of multiple specialists. *Id.*

---

[2] Sergeant Dayton's first name is not set forth in the Certified Record.

[3] Claimant's testimony can be found in the Certified Record at No. 14.

Claimant stated that he did not have lung, kidney, or heart issues prior to being diagnosed with COVID. *Id.* Claimant understood that the process for receiving pay while disabled due to COVID was different than what Employer used for "Injured on Duty" (IOD) and Heart and Lung Act benefits.[4]

**Employer's Evidence**

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[5]

Mr. Scott testified that he has served in his position since 2003. Risk Management administers several different types of disability benefits to Department police officers, including workers' compensation, Heart and Lung benefits, and benefits pursuant to Act 17.[6] When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor

---

[4] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended.* 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[5] Mr. Scott's deposition can be found in the Certified Record at No. 20. Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 21.

[6] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57a01-02. Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

fills out a "COPA II" form.[7]  From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged injury, and PMA determines if the claim is compensable.  In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

On March 23, 2020, following a stay-at-home order issued by the Employer, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways to minimize the spread in the community as it impacted City operations." Deposition of Barry Scott at 10.  Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work.  Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that -- which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason." Deposition of Barry Scott at 12.  To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time.  From Risk Management's perspective, if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that [Employer] was not trying to
> punish these officers and that it was -- so that they were

---

[7] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form."  *See* Deposition of Barry Scott at 7.

4

not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not -- weren't financially penalized by the condition.

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of an administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-time but would be placed on a disability benefit under the employee disability program.

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments across the City in order to minimize the risk to City employees from hazards on the job[,]" but it does not have "managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors

5

were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020 the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal became responsible for communication with Department officers who may have been infected with COVID. Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies, he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work-related or non-work-related. Further, he related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

### WCJ's Decision

The WCJ found Claimant's testimony to be credible in part. The WCJ determined that Claimant received E-time benefits after reporting to Employer that

6

he was diagnosed with COVID. Nevertheless, the WCJ stressed, Claimant's testimony in and of itself did not establish that he contracted COVID while working or that he suffers ongoing COVID-related symptoms that prevent him from returning to his pre-injury position. The WCJ noted:

> Even if Claimant had established that he spoke to his supervisor about having tested positive for COVID, Claimant acknowledged that he never made a claim for IOD benefits of any sort because he did not initiate the process for obtaining same or complete the necessary COPA II form. Furthermore, Claimant has not presented any medical evidence substantiating his testimony that he contracted COVID while working or remains disabled as a result of a COVID diagnosis.

WCJ's Decision, F.F. No. 6.

As to Employer's witnesses, the WCJ wrote:

> 7. This [WCJ] finds the testimony of the fact witnesses presented by Employer credible, and in so doing finds the payment of "[E-time]" to be a temporary solution to a global crisis. Employer's impromptu designation of "[E-time]" enabled COVID-infected employees to be compensated at a time when they were highly contagious and unable to return to their work duties. It was never meant to be a permanent solution. Furthermore, in order to access said benefits, employees were alleviated of the burden to show that contraction of the virus was work-related.
>
> 8. This [WCJ] finds the payment of "[E-time]" is not the equivalent of an acknowledged work injury. . . . According to [Mr. Scott], "[E-time]" was offered to all City employees who missed time from work during the pandemic, either because of the stay-at-home order or because of quarantine after exposure to [the COVID] virus or after diagnosis with the virus occurred. Of course, if an employee believed that he or she developed [COVID] due to workplace exposure to the virus, the employee was not precluded from filing for IOD benefits (either workers'

7

compensation . . . or Heart [and] Lung [Act] benefits, if applicable). That is true for police officers as well as all other City employees according to [Lieutenant Lowenthal].

WCJ's Decision, F.F. Nos. 7-8.

Thus, the WCJ denied Claimant's Petitions, concluding that he failed to establish a work-related injury that would entitle him to a reinstatement of benefits. Further, the WCJ held, because Claimant was not entitled to workers' compensation benefits, the Employer should not be penalized for its failure to continue to pay Claimant E-time.

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[8]

## DISCUSSION

On appeal, Claimant argues that the E-time payments he received were made in lieu of compensation for his work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying his Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for his work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa.

---

[8] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29, 2025).[9] For the reasons set forth in *Brown, Clarke*, and *Tymes*, we conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

---

[9] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William McNeil, :
:
:
Petitioner :
:
v. : No. 530 C.D. 2024
:
City of Philadelphia (Workers' :
Compensation Appeal Board), :
:
Respondent :

# O R D E R

AND NOW, this 28th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge